# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SUSIE ANN KNUTSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-11-315-FHS-SPS |
| | ) |
| CAROLYN W. COLVIN, | ) |
| Acting Commissioner of the Social | ) |
| Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Susie Ann Knutson requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born July 31, 1950, and was sixty years old at the time of the most recent administrative hearing. (Tr. 218, 818). She completed eleventh grade and has worked as a glove-manufacturing inspector. (Tr. 390, 499). The claimant alleges that she has been unable to work since September 1, 1994, due to multiple sclerosis, vision problems, vertigo, difficulty walking and maintaining balance, stiffness, and problems with bowel and bladder control. (Tr. 384).

**Procedural History**

On June 10, 2002, the claimant protectively applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 106-110), for a period of disability beginning September 1, 1994, with a date last insured of December 31, 1999. Her application was denied. ALJ Peter M. Keltch conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 20, 2004. (Tr. 13-17). The Appeals Council denied review, but this Court reversed on appeal in Case No. CIV-04-517-RAW-SPS and remanded the case for further proceedings. ALJ Richard J. Kallsnick conducted a second administrative hearing and determined that the claimant was not disabled in a written opinion dated December 15, 2008. (Tr. 257-268). The Appeals Council again denied review, but this Court again reversed on appeal in Case No. CIV-09-192-RAW-SPS and remanded the case for further

proceedings. ALJ Osly F. Deramus conducted a third administrative hearing and determined that the claimant was not disabled in a written opinion dated May 18, 2011. (Tr. 487-501). The Appeals Council then denied review, and the ALJ's May 2011 written opinion became the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c), *i. e.*, she could lift/carry fifty pounds occasionally and twenty-five pound frequently, stand/walk six hours in an eight-hour workday, and sit six hours in an eight-hour workday. The ALJ noted that because the claimant could perform medium work, she could also perform light and sedentary work. (Tr. 492). The ALJ concluded that although the claimant could not return to her past relevant work, she was nevertheless not disabled under Rules 203.26 and 203.19 of the Medical-Vocational Guidelines, *i. e.*, "the Grids." (Tr. 500).

## Review

The claimant contends that the ALJ erred in the portion of his opinion that found the claimant not disabled: (i) by improperly evaluating the opinion of her treating physicians, Dr. Paul A. Pradel and Dr. Kamel Kutait, and (ii) because the ALJ's findings were not supported by substantial evidence. The undersigned Magistrate Judge finds that the ALJ *did* fail to properly evaluate Dr. Kutait's opinion, and the decision of the Commissioner should therefore be reversed.

The ALJ found the claimant had the severe impairments of status post left wrist fracture, labyrinthitis, headaches, and mild osteopenia of the left shoulder. (Tr. 489). The relevant medical evidence reveals that the claimant received treatment at Holt Crock Clinic, beginning in the late 1980s. Treatment notes indicate that she saw a number of doctors there, including Dr. Kutait, who treated her in October 1990 for flu-like symptoms and on February 18, 1992 for back pain after a fall the day before. (Tr. 126, 130). He treated her again in December 1992 for coughing and in April 1993 for an aching in her chest (he also ordered an x-ray during this visit, which came back normal). (Tr. 127, 135). In September 1994, Dr. Kutait saw the claimant for pain in her left rib cage. (Tr. 123). On October 20, 2008 and in response to ALJ Kallsnick's request, Dr. Kutait completed an Attending Physician's Statement, indicating that he could not recall when he began treating the claimant but that it was in the mid-1990s. (Tr. 431, 466). He indicated that her diagnoses were dizziness rule out multiple sclerosis or stroke, hypertension, hyperlipidemia, and middle ear disease rule out Meniere's. (Tr. 431). He indicated that the claimant had vertigo triggered by position changes, and that she also had headaches. He also checked boxes to indicate that the claimant's impairments affected her attention and concentration and ability to tolerate work stress, and that they would require unscheduled breaks, produce good and bad days, and likely result in absence from work more than four days a month. (Tr. 431-432). Written in all-capital letters at the end of the assessment is a statement that Dr. Kutait's opinion pertained to the claimant's limitations as they existed on or before December 31, 1999. (Tr. 432).

Dr. Pradel first saw the claimant on May 12, 2001 at Sparks Hospital and treated her for complaints of chest pain. (Tr. 153-156). On July 18, Dr. Pradel completed an Attending Physician's Statement and diagnosed the claimant with dizziness, rule out multiple sclerosis or stroke; hypertension; and hyperlipidemia. (Tr. 188). He noted that the claimant's dizziness was triggered by position changes and that her vertigo was also accompanied by headaches. (Tr. 188). Like Dr. Kutait, he found that the claimant's impairments affected her attention and concentration and ability to tolerate work stress, and that they would require unscheduled breaks, produce good and bad days, and likely result in absence from work more than four days a month. (Tr. 189). As to the claimant's ability to do work, Dr. Pradel stated that the claimant could sit for thirty minutes at a time, up to four hours in an eight-hour workday; that she could stand fifteen minutes at a time, up to two hours of an eight-hour workday; that she could walk less than fifteen minutes at a time, for up to an hour in an eight-hour workday; that she could only occasionally lift/carry up to five pounds; that she could use her hands for grasping and fine manipulation, but not pushing and pulling; that she could not use her feet for repetitive movements; that she could not bend, squat, crawl, climb, reach above her head, stoop, crouch, or crawl; that she could not tolerate exposure to unprotected heights, moving machinery, marked temperature changes, or driving auto equipment, and only occasionally handle exposure to dust, fumes, gases, and noise. (Tr. 190-192).

Other medical records from before and during the insured period indicate that the claimant was treated for dizziness and/or balance problems at the Holt Crock Clinic (where Dr. Kutait worked during at least some of this time), *inter alia*, in 1990, 1992,

1993, and January 1998. (Tr. 121, 125, 128, 129). On October 2, 2002, a state agency physician completed a physical RFC assessment and concluded that she had no exertional limitations. (Tr. 181-187).

The claimant testified at the various administrative hearings that she had to quit her employment in 1994 because she had to do a lot of stooping, bending, lifting, and throwing, and her vertigo would cause her to feel like the room was spinning. (Tr. 222-223, 827-828). She stated that her symptoms began in the late 1980's, that her condition has continued to worsen since she quit her job, that it had become constant, and that it made her feel sick to her stomach and nauseated. (Tr. 224, 226, 459, 821). She stated that she took a motion-sickness medication for the dizziness, but that she believed it had lost its effect on her. (Tr. 225-226). The claimant testified that she could not fully lie down because the "spinning" would get worse, so that she had to sleep in a reclined position. (Tr. 226-227, 822). Additionally, she stated that she goes with her husband to do the grocery shopping, but that she has to hold on to a cart or have someone help her walk because she has a tendency to stagger otherwise, and that even objects weighing only a couple of pounds could negatively affect her balance. (Tr. 228-230, 463).

In his written opinion, the ALJ extensively discussed both Dr. Pradel's and Dr. Kutait's treatment notes and RFC assessments. As to Dr. Pradel's opinion, the ALJ gave it little weight because he found it to be inconsistent with treatment notes in which he largely treated the claimant for chest pains, recommended smoking cessation, and provided no functional limitations for the claimant despite the fact she reported visual distortions while driving. (Tr. 497-498). The ALJ noted that other doctors had treated

the claimant for occasional dizziness due to positional changes, but that even those doctors indicated that the dizziness was not constant. The ALJ further noted that Dr. Pradel's assessments were done five and eleven months after his last recorded treatment of the claimant. (Tr. 498). As to Dr. Kutait, the ALJ summarized his opinion and also gave it little weight, because Dr. Kutait could not remember when he began treating the claimant, his opinion was not supported by and consistent with the medical evidence of record as a whole "for the same reasons explained above," and his treating relationship with the claimant was unknown. (Tr. 498). The ALJ specifically stated that there did not appear to be any evidence that Dr. Kutait ever treated the claimant, or was her treating physician. (Tr. 498). Last, the ALJ noted that neither Dr. Pradel nor Dr. Kutait indicated in their assessments the time period for which their opinions pertained. (Tr. 499). The ALJ then found the claimant not disabled. (Tr. 499).

The medical opinion of a treating physician is entitled to controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) [quotations omitted]. When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight to give it by considering the following factors: (i) the length of the treatment and frequency of examinations, (ii) the nature and extent of the treatment relationship. (iii) the degree of relevant evidence supporting the opinion, (iv) the consistency of the opinion with the record as a whole, (v) whether the physician is a specialist, and (vi) other factors supporting or contradicting the

opinion. *Watkins*, 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinions entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

Although the ALJ was not required to give controlling weight to any opinions that the claimant was disabled or unable to perform even sedentary work, the ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Dr. Kutait expressed such an opinion in his RFC Assessments; however, the ALJ rejected the physical RFC assessment because the ALJ found that there was no evidence Dr. Kutait had treated the claimant and the treating relationship was therefore unknown, and because the ALJ could not tell whether Dr. Kutait's assessment pertained to the insured period despite explicit treatment notes indicating that Dr. Kutait treated the claimant on multiple occasions during the insured period and his assessment stated in all capital letters that it pertained to the period before the date last insured. Although the ALJ took great pains to mention the relevant factors, he failed to properly apply them when he failed to realize that the evidence he claimed as missing was specifically included in the record. Even if the opinion expressed by Dr. Kutait *was not* entitled to controlling weight, the ALJ should have determined the proper weight to give it by applying all of the factors in 20 C.F.R. § 404.1527, but failed to do so

by missing key evidence.  *See Langley*, 373 F.3d at 1119.  *See also Miller v. Barnhart*, 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("[An ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.") [quotation omitted].

Furthermore, although the ALJ was not required to give controlling weight to the opinion of Dr. Kutait that the claimant was temporarily totally disabled, *see, e. g.,* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled."), the ALJ nevertheless *was* required to determine the proper weight to give that opinion by applying the factors in 20 C.F.R. § 404.1527.  Instead, the ALJ assigned the opinion "little weight" because it was "not fully supported by and consistent with the medical evidence of record as a whole for the same reasons explained above."  *See Langley,* 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, [t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527."), *quoting Watkins,* 350 F.3d at 1300.  *See also Miller v. Barnhart,* 43 Fed. Appx. 200, 204 (10th Cir. 2002) ("The [ALJ] is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."); Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *3 (July 2, 1996) ("If the case record contains an opinion from a

medical source on an issue reserved to the Commissioner, the adjudicator must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record."). The ALJ thus improperly performed the necessary assessment by ignoring pertinent records to afford little weight to the treating physician's opinions that the claimant was disabled.

Accordingly, the Commissioner's decision should be reversed and the case should be remanded to the ALJ for further analysis of the opinions of the claimant's treating physician. On remand, the ALJ should properly analyze *all* of the evidence, re-determine whether the claimant has any severe impairments, and if so, determine her RFC based on *all* impairments—severe *and* non-severe—and the work she can perform (if any) and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The undersigned Magistrate Judge thus RECOMMENDS that the Court reverse the decision of the Commissioner and remand the case for further proceedings. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

**DATED** this 11th day of March, 2013.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma